[Civ. No. 547.   Third Appellate District.—February 2, 1909.]

LOU FARMER, Respondent, v. DANIEL BEHMER, Appellant.

PUBLIC NUISANCE—LEASE OF ADJOINING HOUSE BY OWNER FOR PROSTITUTION—SPECIAL INJURY TO PLAINTIFF—INJUNCTION—DAMAGES.— When a house adjoining plaintiff's residence has been repeatedly and knowingly leased by the owner as a house of prostitution, and the plaintiff has been specially damaged by the public nuisance, from the profane and obscene language used by the inmates thereof, which she has been compelled to hear, and the obscene and boisterous conduct which she has been compelled to see, which have interfered with her comfortable enjoyment of life, and with the free use of her adjacent residence, she is entitled to enjoin the owner from permitting his premises to be so occupied, and to recover damages against him for the injury sustained by her.

ID.—NUISANCE PER SE—LESSOR AND LESSEE EQUALLY GUILTY.—A house of prostitution is a nuisance *per se,* wherever it may be situated; and a lessor who knowingly leases it for such purposes is equally guilty of perpetrating the nuisance with the lewd woman who rents it therefor.

ID.—PARTIES—TENANT NOT JOINED—WAIVER OF OBJECTION—JOINT AND SEVERAL LIABILITY TO INJUNCTION.—The nonjoinder of the tenant as a party to the injunction suit cannot be urged when not raised by demurrer or answer; but since both parties are jointly and severally liable for the nuisance, they may be enjoined jointly or severally, and the owner liable therefor cannot object to the relief granted against him, because the tenant is not joined, even though the plaintiff, in order to obtain complete relief, may be compelled to bring another action against the tenant.

ID.—EVIDENCE—SHAM AND VOID LEASE FOR YEARS NO DEFENSE.—When the evidence sufficiently shows that a lease for five years, relied upon by the owner, forbidding the use of the premises by the tenant "as a disorderly house, bawdy-house, or house of ill-fame," without any forfeiture clause, was made by him, with knowledge at the time of the lease that the house was to be used for such unlawful and criminal purposes, and that the forbidding clause was a subterfuge and a sham, it shows that the lease is void and unenforceable between the parties, and its existence is no defense to the action against the owner.

ID.—EVIDENCE—PRIOR AND SUBSEQUENT CHARACTER OF HOUSE—KNOWLEDGE OF LESSOR.—Evidence was admissible to show the character of the house as one of prostitution before as well as after the lease was entered into, not only as tending to show its reputation afterward, but also as tending to show the knowledge of the lessor, who may not shut his eyes to that which is patent to the community, and stop his ears to that which has become notorious among his neighbors, and say he has no actual knowledge.

ID.—MUNICIPAL ORDINANCE—LICENSE TO BROTHELS TO SELL LIQUORS—STATUTE PUNISHING CRIME NOT SUSPENDED.—A municipal ordinance evidently designed to license the keepers of brothels to sell liquors to their guests, under a charter authorizing the city to regulate or prohibit such places, can have no more effect to suspend the statute punishing the crime of keeping a house of prostitution than any other criminal statute can be suspended by ordinance.

ID.—CONSTRUCTION OF CONSTITUTION—"MUNICIPAL AFFAIRS"—LICENSING OF VICE AND CRIME NOT INCLUDED.—While charter powers cannot be exercised so as to conflict with general laws, with the exception of "municipal affairs," that term, as used in the constitution, cannot include the licensing of forms of vice and crime which are both *mala in se* and *mala prohibita.*

ID.—LICENSE OF CRIME AND PUBLIC NUISANCE INTOLERABLE—SUPPRESSION BY INJUNCTION.—It would be intolerable to hold that the

defendant or his tenant may, under the protection of a license to his tenant to sell liquors, keep a disorderly house in violation of a criminal statute, and maintain several varieties of a public nuisance, and by the conduct of the guests of the house make plaintiff's home uninhabitable; and such license can be no defense to an injunction to suppress the nuisance.

ID.—RECOVERY OF DAMAGES.—When plaintiff's ownership of the adjoining property is shown, and there is evidence of its depreciation in value as the result of the nuisance for which the defendant is proved to be responsible, the plaintiff is entitled to recover damages from him, as well as to enjoin the further commission of the nuisance.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

T. J. Butts, for Appellant.

R. F. Crawford, and R. L. Thompson, for Respondent.

CHIPMAN, P. J.—This is an action to obtain a decree permanently enjoining and prohibiting defendant from leasing or renting, or permitting the premises described in the complaint to be leased, occupied or used as a bawdy-house, a house of prostitution or ill-fame or a disorderly house, and for damages.

Plaintiff had judgment as prayed for and for $25 and for plaintiff's costs. Defendant appeals from the judgment on bill of exceptions.

The court found that plaintiff is and "for more than four years last past has been the owner of the premises and dwelling-house" described in the complaint and situated in the city of Santa Rosa, and that during all said time plaintiff has resided upon said premises and now resides there; that for more than four years defendant has been, and still is, the owner of the premises in the complaint described, on which "defendant, more than four years ago erected and has since maintained a two-story house, and during all said time has owned and leased the same; which said house was and is within forty feet of the said premises of plaintiff, and within 182 feet of said plaintiff's residence, and within plain view and hearing thereof"; that "defendant now does, and during all the time

since the construction of his said house (except for the period of about two or three months, when the same was vacant) has knowingly leased and rented the same to various persons, for the purpose of prostitution''; that in October, 1904, defendant leased his said premises to one Sadie McLain, a woman known by him at said time to be a public prostitute, and for the purpose of being used and maintained by her as a house of prostitution and a disorderly house and to be resorted to for the purpose of prostitution; that during all said time (except when vacant as aforesaid) the said premises of defendant were, with his knowledge and consent, constantly occupied, and still is occupied by abandoned and dissolute women and used as and for a house of prostitution; that in October, 1904, when defendant leased said premises to her, she was a public prostitute, which was well known to defendant, and that ever since said time she has employed, and still does employ and keep in said house, dissolute women and prostitutes, ''who upon various occasions, indulged in vile and indecent and profane language in a loud and boisterous manner, which was frequently heard by plaintiff and the inmates of the said dwelling; and said prostitutes frequently exposed themselves openly and publicly at the windows of defendant's said house, and upon the street, within sight of plaintiff's said dwelling, and in an immoral and indecent manner''; that said Sadie McLain during said time furnished and sold intoxicating liquors therein to various persons, without having procured a license therefor as required by the ordinances of said city, and that visitors at said house frequently became intoxicated thereby and were boisterous and disorderly, and often used vulgar and profane language both in said house and upon the street, and indulged in drunken brawls which were seen and heard by plaintiff and the inmates of her home, from her said residence and in going to and from the same; that ''because of the said immoral, indecent and obscene conduct, and vile and profane language and obnoxious sights and sounds, plaintiff's sleep and that of the inmates of her house was frequently disturbed and interrupted, and plaintiff thereby has been, and still is, deprived of the ordinary comfortable and peaceable and respectable enjoyment of her home and domestic life; and her said property has thereby sustained private, special, direct and irreparable injury, different in degree and kind from that sustained by the public at large''; that ''unless

restrained by this court, the defendant will continue to lease and rent his· said house and premises for the purposes aforesaid''; that plaintiff has sustained damages in the sum of $25; that defendant threatens to continue to lease and permit his said house to be used as a house of prostitution and a disorderly house, and unless restrained will continue so to do.

As conclusions of law the court found that the lease from defendant to Sadie McLain, set out in defendant's answer, ''was and is unlawful, and no defense to this action, or protection to the defendant''; that plaintiff has no adequate or speedy remedy at law and her damage is irreparable, and plaintiff is entitled to the injunction prayed for.

1. That the premises of defendant were erected and used continuously, from August, 1893, except for a short time, up to the date of the trial, October 29, 1907, for the purposes found by the court is clearly proved, and that the conduct of the occupants and its effect upon plaintiff and her household were as found by the court, is equally well proven. Defendant himself testified that he built the house to be rented and used by abandoned and. profligate women, and yet, although three or four women tenants prior to the lease given Sadie McLain, of the class mentioned, had occupied the premises and conducted their disreputable commerce for many months, and Sadie McLain had for several months prior to the lease pleaded in defense occupied the premises for like purpose and continued so to do under the lease, defendant testified that he did not know her character or ·the character of. her house, and had no cause for believing that she was keeping a house of this character. The general reputation of the house throughout its tenancy was established by a host of witnesses; defendant had resided in Santa Rosa for a long period; he collected his rentals monthly, going personally to the premises, and he built the house to be used by women for the purposes found by the court. The circumstances and facts shown were such as to compel the court to reject defendant's testimony that he was ignorant of what was taking place on his premises, as knowingly false.

The defense interposed goes to the law of the case rather than to the facts, and we will now consider the points urged for reversal.

2. Without stopping to quote from the complaint, we think it quite sufficient in its averments to show special injury to

plaintiff. The premises had by the conduct of their occupants become "indecent and offensive to the senses," and, as found by the court, "an obstruction to the free use of property" of plaintiff so as to "interfere with" its "comfortable enjoyment" and the "comfortable enjoyment of life" while residing on it, and was and is a nuisance. (Civ. Code, sec. 3479.) And "a private person may maintain an action to abate a public nuisance, when specially injurious to him" (Civ. Code, sec. 3493), and "an action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, . . . and by the judgment in such action the nuisance may be enjoined or abated as well as damages recovered." (Code Civ. Proc., sec. 731.) The complaint charges injury from a public nuisance, which as to plaintiff is fully shown by averments to be a private nuisance, against which equity will relieve. (*Fisher* v. *Zumwalt*, 128 Cal. 493, [61 Pac. 82].) The demurrer was rightly overruled.

"An injunction may be granted: 1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually. . . .

"3. When . . . defendant is doing or threatens, or is about to do, or is procuring to be done, some act in violation of plaintiff's rights." (Code Civ. Proc., sec. 526.)

The evidence was that defendant had repeatedly and knowingly leased the premises for immoral purposes, and he testified in substance that he did not intend to interfere with the lease he had given for these purposes, but did intend to suffer such use of the premises in the future. Defendant's counsel seems to rest his argument here upon the assumption that defendant was ignorant of the purposes for which the Sadie McLain woman rented the house, and that he had not consented to such use or connived at it, and hence she alone is guilty of perpetrating the nuisance and the consequent injury. But the evidence warrants no such assumption; on the contrary, it warrants the finding of the court that defendant is equally guilty as the primary cause of establishing and continuing the nuisance. A house of prostitution is a nuisance *per se*, and is so regarded wherever situated. (Wood on Nuisances, sec. 29; *Pon* v. *Wittman*, 147 Cal. 280, [81 Pac. 984].)

3. It is urged that Sadie McLain is a necessary party, and should have been joined as defendant in the action. Defendant neither demurred nor answered on this ground, and this omission generally would constitute a waiver of the objection. (Code Civ. Proc., secs. 430, 434; *Tatum* v. *Rosenthal,* 95 Cal. 129, [29 Am. St. Rep. 97, 30 Pac. 136].) In *People* v. *Gold Run D. & M. Co.,* 66 Cal. 138, [56 Am. Rep. 80, 4 Pac. 1152], it was held that "in an action to abate a public or private nuisance, all persons engaged in the commission of the wrongful acts which constitute the nuisance may be enjoined, jointly or severally." The case here was tried without this objection being made, and we do not think it is of such character as that the judgment would be ineffectual by reason of not having made the tenant of defendant a party. If, to obtain complete relief, plaintiff should be compelled to bring an action against the tenant, it is not a matter of which defendant can complain. As was said in the case last cited: "It is the nuisance itself, which, if destructive of public or private rights of property, may be enjoined," and defendant's participation in its commission may be enjoined without joining others who may be also guilty.

4. Defendant pleaded a written lease to Sadie McLain, dated March 1, 1905, for five years, at a monthly rental payable in advance, "provided, that said premises shall not during the said term be used as a disorderly house, bawdy-house or house of ill-fame." There was a clause forfeiting the lease for nonpayment of rent but none for violation of the quoted proviso. Defendant covenanted for the peaceable and quiet enjoyment of the property by the lessee, for the term, save only for failure to pay rent, and the lease was not recorded. The evidence shows that the prohibitory clause was a subterfuge and a sham, and was, as the court found, "unlawful and no defense to this action." Having, as the evidence warranted the court in so finding, been entered into by defendant for an unlawful purpose, in fact for the commission of crime (Penal Code, section 316), the contract was void and nonenforceable between the parties (*Chateau* v. *Singla,* 114 Cal. 91, [55 Am. St. Rep. 63, 45 Pac. 1015]), and it would be a reproach to the law to allow defendant to shield himself by its provisions. (*De Martini* v. *Anderson,* 127 Cal. 33, [59 Pac. 207].)

5. And this latter case disposes of defendant's objection to testimony as to the character of the house before and after the

lease was entered into. Quoting from the syllabus, which is justified by the text, it reads: "Evidence of the prior bad reputation of the house before the date of the lease is not only admissible as tending to show its reputation afterward, but also as tending to show the knowledge of the lessor, who may not shut his eyes to that which is patent to the community, and stop his ears from that which has become notorious among his neighbors, and say he has no actual knowledge."

6. Defendant contends that he presented a complete defense in the ordinance of the city of Santa Rosa and the license issued to Sadie McLain pursuant thereto.

The trustees of the city put their moral conscience to sleep and passed an ordinance (since repealed, as I understand) requiring all "boarding and lodging houses" located and conducted in the quarter of the city known as the "Red Light District," whose boundaries are by the ordinance defined, to pay a license. While the ordinance speaks of boarding and lodging houses only, its provisions show unmistakably its object to have been to license bawdy-houses. It requires persons conducting the house to keep a register of the name, date of arrival and departure of each guest, which shall be open to the inspection of the chief of police; that the keeper of the house shall cause an examination of each guest at least once every two weeks by a qualified physician, and that such physician shall deliver to the person so inspected "a certificate of the result of his inspection," which must "be posted in a conspicuous place in the apartment occupied by such guest." It also permits the keeper of such house to furnish and sell to guests and visitors "spirituous, vinous and malt liquors to be used on the premises, and the provisions of sections 9 and 10 of ordinance 238 of the city of Santa Rosa, shall not apply," i. e., exempting the keepers of these brothels from taking out a license as venders of such liquors. This ordinance was passed pursuant to the powers given the city by section 31 of its charter granted by statute of 1905 (Stats. 1905, p. 867), as follows, at page 879: ". . . 14. To declare what are nuisances. . . . 16. To regulate or prohibit dance houses, bawdy-houses, houses of ill-fame, assignation houses, and all kinds of disorderly places." Defendant introduced in evidence a license reading: "This is to certify that Sadie McLain, for the sum of $45, is authorized to keep, conduct and carry on a boarding house and lodging house No. 720 First,

Street, for the term of three months." We do not believe
that the citizens of Santa Rosa, in voting for their charter,
intended to authorize their city trustees to legalize, by
licensing, what the statute denounces as crimes, or that the
charter could be given such effect had they so intended.

It is a novel doctrine that the legislature may empower a
city, by its charter, to suspend the operation of general laws
punishing crime. No one would for a moment contend that
murder, manslaughter, larceny, burglary, or any other of the
long list of crimes punishable by statute could be condoned or
palliated by an ordinance regulating or licensing such offenses.
The heinousness or degree of the crime can make no difference.
The statute punishing the keeping of a house of prostitution
as a crime can no more be suspended in its operation than
any other criminal statute. Nor can it be held that the
charter provision works a repeal of the general law, for the
charter powers may not be exercised so as to conflict with
general laws save only in regard to what may properly be
called "municipal affairs," and surely the licensing of forms
of vice and crime which are both *mala in se* and *mala prohib-
ita* cannot be so classed. (Const., art. XI, secs. 6, 8, 11.)
"All charters framed or adopted by authority of this consti-
tution, except in municipal affairs, shall be subject to and
controlled by general laws." (*Id.*, sec. 6.) To say that
under her license defendant's tenant may keep a disorderly
house, may maintain several varieties of a public nuisance,
may, by the conduct of her guests, make plaintiff's home
uninhabitable, may, in short, conduct a house in open violation
of law, would be intolerable. Nor can defendant be permitted
to take refuge under an ordinance or license which could be
no protection to his tenant, for he is tarred with the same
stick and the odor of her scarlet garments is upon him; he is
morally, and possibly legally, as guilty as she. Any other
view of the ordinance and the license would import into the
term "regulate" a power which, aside from its being in viola-
tion of the general law, would shock the moral sense, and
impute to the citizens of Santa Rosa a contempt for what we
must assume to be the better sentiment of the community.

In a very well-considered case where the questions here
involved were before the court, it was held in *Reaves* v. *Terri-
tory,* 13 Okl. 396, [74 Pac. 951], that an injunction will lie to
suppress a common nuisance, and that a license to sell intox-

icating liquors and to operate a theater at a place designated will not justify the conducting of such business in a manner offensive to decency and public morals, nor will such license be any protection against unlawfully permitting and maintaining a public nuisance. The case here is much stronger, for the immunity claimed under the license is to maintain what is a public nuisance *per se,* and protection is sought for conduct made a crime by statute.

7. Upon the question of damages defendant says: "There are so many reasons why the plaintiff cannot recover damages in this action, that it seems like a useless waste of time to call the court's attention to more than one or two."

Upon the evidence, plaintiff's ownership of the property claimed by her is shown, and there was evidence of its depreciation in its value much beyond the judgment, which was but for nominal damages. Damages may be recovered as well as relief by enjoining further commission of the nuisance. (Code Civ. Proc., sec. 731.) Defendant's argument proceeds upon the assumption that he was guiltless, and that the injury complained of was committed by his tenant, who, he claims, was the "intervening, independent author of the injury." But the facts do not warrant this assumption.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1909.