[No. A047630. First Dist., Div. Two. Dec. 10, 1990.]

ALFONSO MARTINEZ, Plaintiff and Appellant, v. PACIFIC BELL, Defendant and Respondent.

**COUNSEL**

Malcolm A. Smith for Plaintiff and Appellant.

Margaret deB. Brown, Sarah J. Diehl, Steven D. Rathfon and Gerard J. Donnellan for Defendant and Respondent.

**OPINION**

**PETERSON, J.**—Appellant received severe injuries when he was shot by unknown persons during a robbery. He alleged the respondent telephone company was liable for his injuries, because the robbers were attracted to appellant's neighborhood by a public telephone. The trial court dismissed appellant's claims. In affirming, we will hold the telephone company is not vicariously liable for intentional torts committed by third party assailants, even though such torts occurred in the vicinity of—or might have some tangential connection to—a public telephone.

I. FACTS AND PROCEDURAL HISTORY

For the purposes of this appeal, following a judgment of dismissal after the sustaining of a demurrer, we assume the truth of the facts pleaded in the complaint.

Appellant is the operator of a parking lot in Berkeley, and works on the premises. Respondent Pacific Bell (Pac Bell) and another entity, East Bay Pay Phone Company (East Bay), each placed a public telephone nearby, on a public sidewalk about 20 feet away from a parking attendant's booth which was used by appellant when operating the parking lot.

The area allegedly became a haunt of undesirables. Appellant alleged "the telephones attracted large numbers of youths who hung about the telephones, making and receiving calls. . . harassing and intimidating passersby, pedestrians, and parking lot customers."

In April 1987 and again in July 1988, appellant was assaulted by "persons attracted to and hanging about the aforementioned coin-operated telephone booths." After those attacks, appellant contacted Pac Bell and East Bay, asking them to remove their public telephone booths, since "the booths were being used primarily or exclusively for the purposes of conducting illegal drug transactions, and . . . the people hanging around and using the [telephones] represented a danger to the life and safety of [appellant] and others." However, Pac Bell and East Bay "ignored the requests and warnings of [appellant], and . . . failed and refused to remove their coin-operated telephone booths."

In February of 1989, appellant was "again robbed at gunpoint by persons attracted to and hanging about" the telephones. Appellant was shot in the hand and back; the attackers escaped with his money.

Appellant suffered substantial injuries, including the loss of a kidney. He alleged in his complaint that Pac Bell and East Bay were liable for his injuries sustained in the robbery because they had "negligently ignored the warnings and requests" to remove the telephones. East Bay answered and asserted affirmative defenses; Pac Bell demurred on the ground there was no legal duty making it liable here for the intentional criminal activities of third parties. The trial court sustained the demurrer, with leave to amend.

Appellant dismissed his claims against East Bay pursuant to a stipulation; he amended his complaint to allege liability against Pac Bell based upon claims of "Negligence," "Premises Liability," and "Public Nuisance."

Pac Bell again demurred, and the trial court sustained the demurrer without leave to amend. Appellant timely appealed from the ensuing judgment of dismissal.

## II. DISCUSSION

We conclude we must affirm. We find no recognized legal basis for imposing vicarious liability on the owner of a public telephone for the commission of crimes in its vicinity by unknown third persons.

Appellant contends Pac Bell is vicariously liable, on causes of action alleged under three recognized common law theories—premises liability, negligence, or nuisance, for the acts of unknown third parties who robbed him after they were allegedly attracted to the area by the nearby pay telephones. However, there was no special relationship here giving rise to a duty on Pac Bell's part to protect appellant from third party assailants. Further, the telephone owned by Pac Bell was not, as a matter of law, the proximate or legal cause of the assailants' tortious acts. We, therefore, conclude all these causes of action were correctly dismissed.

### A. *Premises Liability Is Limited to the Premises*

Appellant did not allege he was injured on any premises owned or controlled by Pac Bell, nor even while he was trying to use a pay telephone on a public sidewalk. He was injured on different premises, his parking lot, when unknown third parties robbed him of money kept in the booth he used as the lot's attendant. Premises liability theories, as conventionally formulated, would not establish any liability on the part of Pac Bell here for the criminal acts of third parties on the premises of the parking lot, which Pac Bell did not own or control and from which it could not exclude third parties intent on committing crimes. (See *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653] ["A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control."].)

This court (Division Two) has recently joined those courts which have refused to extend premises liability principles, so as to make a property owner liable for a third party's tortious conduct occurring off the premises on nearby land. (*Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [243 Cal.Rptr. 627] [A grocery store was not liable when a person was injured by a negligent motorist on an adjoining street.].) "The imposition of such a duty is foreign to the concept upon which all premises liability is based, i.e., that possession includes the attendant right to manage and control, thereby justifying the imposition of a duty to exercise due care in the management of the property." (*Ibid.*)

The imposition of vicarious liability is particularly disapproved in cases where a landowner is claimed to be liable for the criminal acts of third

parties committed on the premises of another. For instance, in the recent analogous case of *Balard* v. *Bassman Event Security, Inc.* (1989) 210 Cal.App.3d 243, 246 [258 Cal.Rptr. 343], the plaintiff was attacked by third parties on a public street outside a singles bar she had patronized. She contended the security guard or bouncer at the entrance of the bar had a duty to protect her from such an assault—either by warning her of the danger, or by chasing away potential assailants who had been attracted to adjoining public thoroughfares by the fact that possible victims were leaving the premises. The court declined to expand premises liability principles so as to require owners to assume the duty of the sovereign to police public areas near, but not on, their premises: "Inevitably, then, the limits of the duty owed to [plaintiff] by [defendant] in the case before us must be analyzed in light of principles of premises liability law. Those principles . . . yield the conclusion that any duty owed by [defendant] to [plaintiff] regarding third-party criminal activity was confined to the premises [which the security guard was guarding]. Inasmuch as the attack on [plaintiff] took place off the premises, no liability attached to [defendant] and the action against it was properly dismissed." (*Id.* at p. 250.) "While we are wholly sympathetic to [plaintiff's] plight, we do not agree that the creation of such a duty [to police nearby areas or warn of possible attackers nearby] is, in fact, compelled by policy considerations." (*Ibid.*, fn. 5.)

Appellant urges that Pac Bell was required to use or maintain the public telephone, its personal property, in such a way as to avoid undue risk of harm to others on nearby parcels. From this premise, appellant concludes Pac Bell could be arguably liable on a theory related to premises liability— that of negligent management of its personal property, relying in part upon an oft-rejected analogy to the special rules applicable to street vendors, who can be found liable for injuries to patrons caused by the negligent placement of their trucks. (See, e.g., *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803-805 [87 Cal.Rptr. 50] [collecting cases in which child patrons were allowed to recover against vendors for injuries received when they ran into public streets in order to reach inviting trucks selling sweets].)

However, appellant's analogy fails for a variety of reasons. First, appellant obviously was not a child lured into a dangerous street by a person enticing him with the prospect of something good to eat. He remained on his own premises, and was not attempting to patronize pay telephones as a result of Pac Bell's blandishments or solicitations when he was injured by the intentional act of a third party. More importantly, the street vendor cases are based upon the theory that the vendor can park his truck in a safe place, in order to control and lessen the risk that approaching patrons will be run down by other motorists. This theory, whatever its merits, cannot be extended to impose a duty on the owner of property to prevent intentional

torts by policing nearby areas, which it has no legal right or realistic opportunity to control, in such a way as to lessen such risks. (*Id.*, 7 Cal.App.3d at pp. 805-806.)

The owner of a pay telephone has no legal right, much less opportunity, to prevent members of the public from approaching the booth used by the attendant in a parking lot near a pay telephone. No court has ever extended the rationale of the street vendor cases to create vicarious liability for the torts of third parties on private property near property owned by the defendant; indeed such an extension has been expressly rejected by this court (Division Two) and others. "We . . . decline to extend the duty recognized in the street vendor cases to a commercial enterprise operating at a fixed location." (*Owens* v. *Kings Supermarket, supra*, 198 Cal.App.3d at p. 388.) "The rules laid down for street vendors are founded upon distinctions not here present." (*Nevarez* v. *Thriftimart, Inc., supra*, 7 Cal.App.3d at p. 805.) "This elastic concept of business premises is uniquely appropriate to the vendor whose commercial activities are conducted from a mobile vehicle at shifting locations on the public streets. However, we know of no decision which has applied this standard to one whose business is conducted on private property in a fixed location. Indeed, it is difficult to perceive how such a rule could be fashioned." (*Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1146 [214 Cal.Rptr. 405].) Extension of tort concepts so as to impose liability on solvent owners of property for criminal acts committed by third parties on *another's* property is, thus, wholly inconsistent with the principles underlying premises liability itself.

Finally, criminal use of a public telephone in committing one crime—the illegal sale of drugs—does not trigger the vicarious liability of a telephone company when other criminals (or even the same ones) go onto nearby property to commit another crime—robbery. Conversely, the parking lot owner should not be liable to the telephone company if criminals, who originally came into the area to use the lot—or even to rob the parking attendant, also damage nearby pay telephones. "The courts . . . have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control." (*Owens* v. *Kings Supermarket, supra*, 198 Cal.App.3d at p. 386.) Appellant's contentions would create a novel species of joint and several premises liability assertable against nearby property owners for the crimes perpetrated by third parties in the neighborhood. We reject the invitation to distort the recognized principles of premises liability or negligent management of property by such means.

### B. *Negligence Arises Only From Breach of a Legal Duty*

Appellant's negligence claims also fail because Pac Bell owed appellant no legal duty to prevent third party assailants from robbing him in

his parking lot. While a private landowner operating a parking lot owes its *own* patrons a duty to exercise due care for their protection, Pac Bell had no such duty as to persons on the parking lot it neither owned nor controlled where the attack on appellant occurred. (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 807 [205 Cal.Rptr. 842, 685 P.2d 1193]) That duty only arises "between a possessor of land and members of the public who enter in response to the landowner's invitation." (*Id.* at p. 806.) Pac Bell did not own, possess, or control, and invited no one onto, the parking lot. It, thus, owed no duty of care to protect appellant at that location.

"While the [tortious] conduct of third persons might have been foreseeable, defendant's clear lack of control made it impossible to have instituted preventative measures. Thus, where the absence of control has been unequivocally established, no basis for finding a duty or imposing liability exists." (*Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656, 666 [250 Cal.Rptr. 57].)

"In this case, the record establishes without question [an attack by a third party] off the premises leased by [defendant] on property not within the possession or control of [defendant], but rather on the premises of another . . . ." (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at p. 1146.) "Under the facts here presented, there is simply no basis for finding that [defendant] owed any duty of care to decedent while decedent was on premises neither owned, possessed, nor controlled by . . . defendant." (*Id.* at p. 1147.) "The determination that the defendant owes the plaintiff no duty of care is a complete defense to a cause of action for negligence." (*Owens* v. *Kings Supermarket, supra,* 198 Cal.App.3d at pp. 384-385.)

C. *The Alleged Nuisance Was Not a Legal or Proximate Cause of the Intentional Torts of Third Parties*

 Appellant's most ingenious and amorphous theory is based upon nuisance principles. He contends first that a question of fact exists as to whether the pay telephone here, which allegedly became a place of resort and loitering for drug dealers and criminal elements, constituted a nuisance. Assuming, without deciding, that a nuisance existed, appellant then extends his argument to one which we must reject; i.e., that, since Pac Bell arguably maintained a nuisance attracting the presence of criminals, it may consequently be vicariously liable for an intentional tort, amounting to robbery or criminal assault, committed on the property of another by such parties who first patronized or congregated at or near the place of alleged nuisance.

Whatever might be the proper answer to the question of whether a pay telephone can constitute an abatable nuisance in certain circumstances, because arguably it might cause inappropriate noise or undesirable pedestrian traffic, no case has held that a person owning or maintaining a nuisance on his property is liable to a victim shot by another person in the course of a robbery on an adjacent property. In such circumstances, the alleged nuisance is not the legal cause of the robbery. The independent and intervening intentional act of a third party is.

The definition of a nuisance is indeed exceedingly broad. As we recently recognized, "The confusion in this case arises, in part, from the very word 'nuisance.' 'The statutory definition of nuisance [Civ. Code, § 3479] appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property. As stated by Prosser: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition." ' " (*Tint* v. *Sanborn* (1989) 211 Cal.App.3d 1225, 1227-1228 [259 Cal.Rptr. 902], quoting *Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 919 [162 Cal.Rptr. 194], quoting Prosser, Law of Torts (4th ed. 1971) Nuisance, § 86, p. 571, fns. omitted.)[1]

### 1. Tortious Conduct Arising From a Nuisance Must Be Proximately Caused Thereby

Whether liability is based upon nuisance or negligence, the scope of that liability has been similarly measured: It extends to damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others. As early as 1905, the principle had been established in California that liability in nuisance is limited by Civil Code section 3333 to " 'the amount which will compensate for all the detriment proximately caused thereby.' " (*Coats* v. *Atchison etc. Ry. Co.* (1905) 1 Cal.App. 441, 444 [82 P. 640].) Whether tortious conduct is charged as a nuisance or as negligence, our Supreme Court has also recognized that it is still only "liability to others for damages proximately caused by it" for which a party may be liable in nuisance. (*Vasquez* v. *Alameda* (1958) 49 Cal.2d 674, 676 [321 P.2d 1].) Thus, "Nothing would have been added by terming the claimed negligence a 'nuisance.'

---

[1] *Tint* v. *Sanborn, supra*, held that "a trial court properly instructs the jury on comparative negligence principles in a nuisance action alleging damages to real property where . . . a defense claim is made that if a nuisance exists it arose because of . . . negligence." (211 Cal.App.3d at p. 1234, fn. omitted.)

Damages in 'nuisance' or negligence are similarly measured." (*Dufour* v. *Henry J. Kaiser Co.* (1963) 215 Cal.App.2d 26, 29-30 [29 Cal.Rptr. 871].)

Appellant actually seeks damages here for the consequences of the battery by unknown attackers bent on robbery. Thus, appellant seeks to impose on Pac Bell vicarious liability for that battery, a separate and intervening act, not direct liability for any nuisance the pay telephone is alleged to constitute.

This court (Division Two) has previously recognized that "the issue of proximate cause ordinarily presents a question of fact. However, it becomes a question of law when the facts of the case permit only one reasonable conclusion." (*Capolungo* v. *Bondi* (1986) 179 Cal.App.3d 346, 354 [224 Cal.Rptr. 326] [No proximate or legal cause existed as a matter of law from defendant's having left a parked car beyond the posted time limit, where the injured party "would have had to swerve around the car in exactly the same manner" even if the car had not been parked longer than the applicable time limit.]; see also *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 516-517 [238 Cal.Rptr. 436] [The owner of a public restaurant was not liable for the actions of a neighbor who said he was going " 'hunting for humans' " and then slaughtered restaurant patrons, because the failure to provide an unarmed security guard to prevent thefts at the restaurant was not a legal cause of the neighbors' murders.].) Assuming arguendo that the public telephone could be said to constitute a nuisance, it was not the legal or proximate cause of the robbery of appellant by third persons on other premises.

In this connection, we also see an analogy to the facts of *Gonzalez* v. *Derrington* (1961) 56 Cal.2d 130 [14 Cal.Rptr. 1, 363 P.2d 1]. In that case, plaintiffs sued a gasoline station because it had sold gasoline to two men who subsequently used the gasoline to commit arson at a bar, killing and injuring many bar patrons. It was uncontested that the gas station had violated a local law which was designed to prevent accidental gasoline fires and explosions, and required that gasoline be purchased in a closed two-gallon can rather than in an open container. Our Supreme Court, nevertheless, upheld the lower court's ruling that the gas station's sale of the gasoline was not sufficient to establish vicarious liability as the proximate cause of the intentional acts of the two arsonists: "In view of the facts in this case, there was no evidence that the violation of the municipal ordinance was a proximate cause of the resulting injuries and deaths. Rather, the uncontradicted evidence shows that the injuries and deaths were due to an independent, intervening cause, to wit, the action of [defendants] in starting the fire.

The rulings of the trial court were correct." (*Id.* at pp. 133-134.) Similarly, if there was a nuisance here, it was not the proximate cause of the robbery.

### 2. No Special Relationship Existed Creating a Duty of Pac Bell to Control the Conduct of Appellant's Assailants

■ Since the allegations of the complaint essentially only charged that Pac Bell's negligence resulted in the maintenance of a nuisance, we briefly renew our discussion of negligence and premises liability theories in the preceding sections of this opinion. "Viewed in the light of the foregoing California duty analysis we also conclude that there is no duty in this setting." (*Vandermost* v. *Alpha Beta Co.* (1985) 164 Cal.App.3d 771, 779 [210 Cal.Rptr. 613] [The owner of a late-night restaurant had no duty to comply with certain demands in order to protect a patron from injury during an armed robbery by a third person, even though the robber first tried unsuccessfully to rob the restaurant].) "When the minimal nature of foreseeability is viewed in relation with the other factors relevant to determine a duty, we conclude that defendants owed plaintiff no duty [to protect him from harm during a robbery]." (*Ibid.*) "While it is certain that plaintiff suffered an injury, the closeness of the connection between that injury and defendant's conduct is at best tenuous . . . . The sole moral blame in this setting must be directed toward [the robber]." (*Ibid.*)

The general rule of law is that no duty to control a third party's conduct exists in the absence of some special relationship creating such a duty. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23].) "Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another. [Citations.] Moreover, this rule is applicable even in cases in which the third person's conduct is made possible only because the defendant has relinquished control of his property to the third person . . . ." (*Ibid.*)

Here, there was no such special relationship. The assailants did not bear towards Pac Bell any relationship which ordinary passersby or telephone users would not also have. Pac Bell did not bear towards appellant any special relationship arising from premises liability principles, and appellant could not unilaterally create such a relationship. Appellant's relationship towards Pac Bell was no different from any other person in the vicinity, whether passerby or neighbor; no special relationship existed giving rise to a duty. As this court (Division Two) held in *Kane* v. *Hartford Accident & Indemnity Co.* (1979) 98 Cal.App.3d 350, 355 [159 Cal.Rptr. 446]: "The

threshold determination that a duty is owed the plaintiff is a question of law within the exclusive province of the court. [Citation.] A determination that as a matter of law no duty is owed to the plaintiff is particularly common in situations in which the defendant's responsibility for the activities of third parties is involved."

We do not deal here with any conventional attempt to abate a nuisance (in fact, the pay telephone was removed prior to suit), nor with the question of nuisance damages as measured by a diminution in appellant's property value. The damage allegations of the complaint, which seek recovery for appellant's personal injuries suffered in a robbery, are totally inconsistent with such historical parameters of liability and damage in a nuisance action.[2]

### 3. No Policy Reasons Exist for the Extension of Tortious Liability for a Nuisance Where It Does Not Proximately Cause the Injury

 Arguably a neighboring landowner might potentially receive normal nuisance remedies of injunction or damages for diminution in property value, which damage allegedly resulted from drug-related activities on another's nearby property. However, that proposition fails to support appellant's extended contention he can or should recover against the owner of a public telephone, which allegedly constitutes a nuisance due to its use by criminal elements, for injuries suffered in a robbery by third parties on nearby property, on the rationale those third parties may initially have come to or been attracted to the general area because of the pay telephone.

Criminals may choose to come to a specific area for a variety of reasons—availability of potential victims, lax local law enforcement, presence of liquor or drugs, the existence of means of concealment or escape routes,

---

[2] Nuisance liability is certainly well recognized—indeed it is older than the concept of negligence, and stems as much from medieval laws of property as from tort concepts. (See *Tint* v. *Sanborn, supra,* 211 Cal.App.3d at pp. 1233-1234, fns. 1 and 2.) Our Supreme Court has recently recognized, however, that ancient concepts of liability, derived from the very different conceptions of property prevailing in agrarian England under the Plantagenets, cannot simply be torn from their historical context nor be applied to new technological or social conditions without examination of the underlying policies in favor of extending those theories of liability. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 147 [271 Cal.Rptr. 146, 793 P.2d 479] [declining to recognize liability for a "conversion" of plaintiff's diseased spleen, where the spleen was used for scientific research after its removal from a patient].) "We have recognized that, when the proposed application of a very general theory of liability in a new context raises important policy concerns, it is especially important to face those concerns and address them openly." (*Id.* at p. 135.)

even such prosaic matters as ready means of transportation, cheap accommodations, or the presence of a park or public restroom. Under modern conditions where members of the public move freely about, subject to the maintenance of public order and the prevention of crime by law enforcement officials, an owner of publicly used personal property, having no law enforcement power toward or control over persons using that property, incurs no civil liability to persons injured by the commission of an intervening criminal act such users commit in the neighborhood of that property.[3]

In short, no necessary legal connection exists between the maintenance of this type of alleged "nuisance"—property which by definition is available for the essentially unsupervised use of the public—and the imposition of a legal duty to police the surrounding area for hoodlums, or compensate as a matter of vicarious liability for their intentional and intervening tortious conduct. No persuasive policy reason exists for creating such a rule.

Appellant relies in part upon the fact that Pac Bell has stated, in bill inserts mailed to customers, its corporate policy of removing a public telephone which contributes to the causing of a public nuisance. Assuming arguendo Pac Bell thereby recognized a moral and legal duty to abate a public nuisance related to noise, congestion, or even flagrant violation of the law, violation of such assumed duty, to abate those conditions disturbing the public, does not constitute a proximate cause of the independent intervening act of third parties who went onto adjacent premises where appellant was present and there assaulted and robbed him. Public telephones can be reasonably expected to attract users from the criminal element of society. Neither public policy, nor the principles of nuisance or tort law, require the company providing public telephones to assume the duty of preventing such users from intentionally committing crimes on adjacent property of another, or to bear the vicarious liability therefor.

We reject appellant's contention that venerable nuisance concepts should be manipulated so as to impose that duty and that vicarious responsibility on the owners of nearby property, who lack the legal or practical ability to control such criminal actions of third parties. To hold as appellant urges in

---

[3] It would be irrational to suggest, for instance, that an innkeeper is liable merely because one of his overnight lodgers commits a robbery in the area, even though the lodger might not have been in the area if not for the fact there was room at the inn; or that the owner of a newspaper rack should be liable if a customer takes a paper out of the rack and uses it to start a fire on nearby property, even though the arson could not have occurred in precisely the same way if the newspaper rack had not been present—and even though the arsonist may have been attracted to the area of the newspaper rack because he wanted to read a spicy libel or an alarming advertisement. (Cf. *Gonzalez* v. *Derrington, supra,* 56 Cal.2d 130.)

this case would simply improperly impose a remote and insubstantial factor, or a cause out of natural and continuous sequence, as the legal basis for recovery in injury cases alleged to arise from maintenance of a nuisance. We find no reason of precedent or policy justifying such unwarranted extension of vicarious tort liability.

### III. DISPOSITION

The judgment of dismissal is affirmed. Each party shall bear its own costs.

Kline, P. J., and Smith, J., concurred

Appellant's petition for review by the Supreme Court was denied March 13, 1991.