[No. A058265. First Dist., Div. Four. Nov. 30, 1993.]

ALBERT G. LEW et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CARRIE L. BYRD et al., Real Parties in Interest.

## COUNSEL

David A. Self, Stuart A. McIntosh and Thomas N. Petersen for Petitioners.

No appearance for Respondent.

Philip D. Rapier for Real Parties in Interest.

## OPINION

**PERLEY, J.**—Petitioners Albert G. Lew and B. K. Lew, owners of an apartment building in Berkeley, seek a peremptory writ of mandate to compel respondent superior court to set aside its judgment in favor of 75 plaintiffs in a consolidated small claims matter. We issued an alternative writ at the direction of the Supreme Court and, having considered the merits of the petition, now discharge the alternative writ and deny the petition.

### PROCEDURAL AND FACTUAL BACKGROUND

Real parties (plaintiffs below and hereafter) are neighbors of a 36-unit HUD-insured section 8 (42 U.S.C. § 1437 et seq.) apartment complex owned by petitioners located at 1615-1617 Russell Street, Berkeley, California. In August 1991, 66 actions were filed by plaintiffs in small claims court and consolidated for trial. According to the exemplar claim attached to the instant petition, plaintiffs contended that the defendants "allow illegal activity to occur on their property at 1615 & 1617 Russell St. which has caused me emotional and mental distress." Plaintiffs prevailed in small claims court, and petitioners appealed. The appeals were consolidated with nine others for a total of seventy five, and a trial de novo was held in superior court commencing on December 3, 1991.

At the trial de novo, several, although not a majority of the plaintiffs, testified. The other plaintiffs furnished affidavits setting forth their damages.[1] Many Plaintiffs signed a statement in the following form: "I have been confronted by the drug dealers, drug customers, and/or prostitutes that frequent and work around and from 1615-1617 Russell Street. On numerous occasions I have reported to the police the drug activity and other illegal activity coming from this property. [¶] Weekly I have lost many hours of sleep from the cars that burn rubber after each drug buy in the middle of the night, people fighting and yelling, sounds of gun shots, and the fear that grips me night and day for myself and my family's safety. [¶] Numerous times I have been confronted by dealers or buyers and I am now afraid to walk near this property and down my street. In fact, I often fear for my life day and night. This fear has permeated my home, my life, and my soul. [¶] I request your Honor award me $5,000 plus court costs for the suffering this

---

[1]In its judgment, respondent court recited: "Each Plaintiff has either testified or submitted a form declaration." Code of Civil Procedure section 116.540, subdivisions (e) and (f), provides that a plaintiff is not required to personally appear in a small claims action *if* the plaintiff is in the armed forces, and meets certain conditions, or is incarcerated. Since the record furnished to this court does not reveal an objection to the failure of plaintiffs to personally appear and petitioners do not pursue the point in their briefing to this court, we must assume they have waived personal appearance.

property has caused me." Some of the plaintiffs drafted their own statements of damages or added individual examples of damage to the form. For example, Edgar Peterson, Jr., added to the form as follows: "Because of this illegal activity my child is unable to use our front yard and I even have to check the back yard since it has been intruded upon from time to time by people running from the police. He is learning to count by how many gunshots he hears and can't understand why he can't even enjoy our rose garden . . . ."

On May 14, 1992, respondent court issued a statement of decision and judgment in favor of the plaintiffs for damages totaling $218,325. The court found that at all relevant times the property was "being used as a center for sale and distribution of drugs." It found that petitioners knew or should have known of the problems generated by their building and had failed to do what a reasonable person under the same or similar circumstances would have done. "While there was testimony of some efforts, including cooperation for a time with local police, the posting of 'no trespass' signs and the installation of new locks on some apartments, credible testimony indicated that a cooperative effort with the tenants and neighbors, a live-in manager, more secure fencing, and a key-card gate, as well as further efforts in cooperation with the City of Berkeley were strongly indicated. [¶] [Petitioners] reacted to the activity on the property by first denying that they were occurring, and then rejecting the notion that anything could be done to remedy the situation. While it is uncontradicted that [petitioners] lost money on the property as an investment, no evidence was presented that they were unable to discuss solutions with neighbors and tenants or to take ordinary steps to ensure the peaceful enjoyment of the apartments in the complex, as well as the vicinity of the property where drug traffic activities had established a pattern of affecting homes along defined routes."

Respondent court found for the plaintiffs on both a private and a public nuisance theory and awarded damages in each case in the amount sought by plaintiffs.

### DISCUSSION

■ Relying on *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557 [275 Cal.Rptr. 878], and other cases refusing to hold defendants liable for the criminal acts of third persons, petitioners contend that a landlord should not be liable for damages resulting from criminal activity or tortious acts committed off of the landlord's property by drug dealers and their customers against third parties when neither the dealers, their customers, nor the third parties are the landlord's tenants.

In *Martinez*, the operator of a parking lot was assaulted by persons hanging about public telephone booths which were located near the lot and were used to conduct illegal drug transactions. After the operator was shot and robbed by unknown persons, he sued the telephone company to recover for his injuries on the ground, among others, that the telephone booth constituted a public nuisance. Although the court rejected the theory, it recognized that ". . . a neighboring landowner might potentially receive normal nuisance remedies of injunction or damages for diminution in property value, which damage allegedly resulted from drug-related activities on another's nearby property." (*Martinez v. Pacific Bell, supra*, 225 Cal.App.3d at p. 1568; see also *Oscar v. University Students Cooperative Association* (9th Cir. 1992) 939 F.2d 808 [neighbors of the building in which drug dealing allegedly occurred have valid cause of action for damages against owners under the Racketeer Influenced and Corrupt Organizations Act and California law]; *Farmer v. Behmer* (1909) 9 Cal.App. 773 [100 P. 901] [neighbor of a house of prostitution can recover damages on a nuisance theory for interference with the use and enjoyment of his property].)

The Legislature has resolved any doubt as to the question of whether a so-called "drug house" is a nuisance through the enactment of section 11570 of the Health and Safety Code.[2] That section, enacted in 1972, provides as follows: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, precursor, or analog specified in this division, and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

Respondent court specifically found that the property was "being used as a center for sale and distribution of drugs." Thus, if the finding is supported by the evidence, the property is a nuisance by legislative definition. It is a nuisance in itself, a nuisance per se. (Cf. *Farmer v. Behmer, supra*, 9 Cal.App. 773, 778.) The fact that the immediate and specific injury plaintiffs suffered from this nuisance was due to the acts of third parties, rather than, for example, being due to noxious gases, is not relevant to the issue of whether the property qualifies as a nuisance under section 11570. That section does not require that the unlawful activity which makes the building a nuisance be conducted by the owner of the building, a tenant of the building, or a person entering with permission.

■ Petitioners take the position that the only remedy for a nuisance as defined by section 11570 is that which is provided by the sections following,

---

[2]All statutory references herein are to the Health and Safety Code unless otherwise designated.

i.e., section 11571 et seq. This remedy is an abatement action against "the owner, lessee, or agent of the building" maintained by a public official or by a citizen in his or her own name. (§ 11571.) It is a comprehensive scheme which includes sale of chattels used in maintaining the nuisance (§ 11581, subd. (a)) and may include closure of the premises for one year (§ 11581, subd. (b)(1)) and a civil penalty of up to $25,000 (§ 11581, subd. (b)(2)). Section 11573.5 provides that, under certain circumstances, the premises may be closed pending trial and provides for assistance to innocent tenants in that event. There is nothing in this statutory scheme for the abatement of "drug houses" that forecloses the lesser remedy of an action for damages in small claims court by a private party and, in fact, subdivision (f) of section 11573.5 provides that the remedies in that section "shall be in addition to any other existing remedies for nuisance abatement actions . . . ."

Civil Code section 3479 defines as a nuisance "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." An action may be maintained for damages "by any person whose property is injuriously affected, or whose personal enjoyment is lessened" by a nuisance as defined by section 3479. (Code Civ. Proc., § 731.) Section 11570 is significant in identifying a "drug house" as a nuisance because it makes clear that such a property qualifies as a nuisance within the broader Civil Code definition. We do not consider that it provides the sole remedy of an injured party. ■ Not only has the Legislature so indicated in subdivision (f) of section 11573.5 but also it is long established law in California that one may maintain an action at law for damages for a nuisance without seeking an abatement thereof. (*McIvor* v. *Mercer-Fraser Co.* (1946) 76 Cal.App.2d 247, 254 [172 P.2d 758].) "Where the acts complained of amount to a nuisance, for which the person injured may have his action to abate the nuisance, he is not limited to that remedy, but may sue to recover the damages sustained by the wrongful acts of the defendant." (*Will* v. *Sinkwitz* (1871) 41 Cal. 588, 594.)

■ It has also been established that persons injured by a nuisance may seek damages in small claims court and that the small claims court has the power to consolidate numerous claims despite the fact that the issues may be complex and the ultimate judgment far in excess of the individual limits of a small claims judgment. (*City and County of San Francisco* v. *Small Claims Court* (1983) 141 Cal.App.3d 470 [190 Cal.Rptr. 340]; see Freeman & Farris, *Grassroots Impact Litigation: Mass Filing of Small Claims* (1992) 26 U.S.F. L.Rev. 261.)

■ The important problem in this case relates to the fact that many of the acts which were injurious to the peace of mind of plaintiffs were

committed off petitioners' property by persons who were not identified as tenants of the property and were not on petitioners' property. It bears emphasis that real parties did not seek to recover for the acts of these third parties but for the act of petitioners in maintaining their property as a nuisance. Although a nuisance and liability therefor may exist without negligence (*Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 318 [331 P.2d 1072]), we need not determine whether it would ever be appropriate to impose liability upon owners whose property, without any fault of theirs, was a nuisance as defined by section 11570. Liability was imposed in this case on a theory of active fault on the part of petitioners in the management of their property.

■ Petitioners make the point that the damages suffered by plaintiffs are no different in kind from the damages suffered by the public at large but differ only in degree and are, therefore, not compensable. This principle, applicable to actions for public nuisances, does not apply in the instant case because the damages suffered affect the use and enjoyment of property. "The fact that a nuisance is public does not deprive the individual of his action in cases where, as to him, it is private and obstructs the free use and enjoyment of his private property. [Citations.]" (*Fisher* v. *Zumwalt* (1900) 128 Cal. 493, 496 [61 P. 82].)

" 'The rule of law is well settled and familiar that every man is bound to use his own property in such manner as not to injure the property of another, or the reasonable and proper enjoyment of it; and that the carrying on of an offensive trade or business which creates noisome smells and noxious vapors, or causes great and disturbing noises, or which otherwise renders the occupation of property in the vicinity inconvenient and uncomfortable, is a nuisance for which any person whose property is damaged, or whose health is injured, or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed thereby, may well maintain an action to recover compensation for the injury.' " (*Fisher* v. *Zumwalt, supra*, 128 Cal. at p. 498.)

■ The mental suffering which is the main component of the injuries alleged by plaintiffs is compensable under a nuisance theory. " 'It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance. [Citations.]' (*Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294]; *Alonso* v. *Hills* (1950) 95 Cal.App.2d 778, 787-788 [214

P.2d 50].) 'Damages recoverable in a successful nuisance action for injuries to real property include not only diminution in market value but also damages for annoyance, inconvenience, and discomfort [citation] . . . .' (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 464 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Smart* v. *City of Los Angeles* (1980) 112 Cal.App.3d 232, 239-240 [169 Cal.Rptr. 174].) '[M]ental distress caused by the nuisance created and maintained by the defendant is an element of loss of enjoyment. [Citations.]' (*Sturges* v. *Charles L. Harney, Inc.*[, *supra*,] 165 Cal.App.2d 306, 323.)" (*Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 287-288 [262 Cal.Rptr. 754].)

Petitioners did not attack the sufficiency of the evidence of damage at trial and do not do so in the instant petition. ▮ They do attack the finding of respondent court that their property was a hub of drug activity and the conclusion that petitioners did not act as a reasonable person in dealing with the problem that existed. Both attacks are without merit.

Sergeant Garen Nielsen testified that he had been the patrol sergeant for the area in which the property was located for one and one-half years and before that had been an undercover narcotics agent for the area for two and one-half years. He estimated that he had been to the property over 250 times on crime-related matters. He testified that the property is a hub or center for drug activity in the neighborhood, a place of "shelter and safety from the police." He had made two dozen arrests at the building and testified that, despite the fact that none of the dealers arrested lived there, they had easy access to the building and employed that access to thwart police efforts to apprehend them.

Weldon Rucker, the assistant city manager, called by the defense, also testified that he had known there was a drug problem at that location since he first became involved with the city's effort to control drugs in 1988. He described the drug operation there as "sophisticated" and the building as "like a fortress" for the sale of drugs. The property was so well known that citizens from other areas seeking to purchase drugs would engage a taxicab to be taken to Melrose Apartments to score.

Not only was there substantial evidence that the property was used in the sale of drugs and the harboring of drug dealers, the conclusion that petitioners did not take all reasonable measures available to them to control their property is supported by the evidence. Mr. Rucker testified that it was possible to clear up drug centers with the help of cooperative and aggressive management. Sergeant Nielsen suggested several specific steps that could be taken to meet the problem at that location. The steps that the court found

could have been taken were not extraordinary, i.e., employment of "a live-in manager, more secure fencing, and a key-card gate." Under these circumstances, this court cannot say as a matter of law that petitioners acted reasonably in their efforts to meet the problem they knew existed on their property.

The alternative writ is discharged and the petition is denied.

Poché, Acting P. J., and Reardon, J., concurred.

Petitioners' application for review by the Supreme Court was denied February 24, 1994.