[No. A065958. First Dist., Div. Three. Aug. 31, 1995.]

ORD & NORMAN et al., Plaintiffs and Appellants, v.
SURPLUS LINE ASSOCIATION OF CALIFORNIA, Defendant and
Respondent.

COUNSEL

Rockwell, Castle & Cason, Ray T. Rockwell and Gabriela A. Alvarez for Plaintiffs and Appellants.

Leboeuf, Lamb, Greene & Macrae, James R. Woods, Sanford Kingsley, R. Scott Puddy and Lorraine A. Barrabee for Defendant and Respondent.

**OPINION**

**CORRIGAN, J.**—Appellant Ord & Norman (Ord), a law firm, contends the trial court wrongly granted summary judgment against Ord's claims that the Surplus Line Association of California (SLA) negligently breached a duty of care owed to Ord regarding its purchase of insurance from a foreign, nonadmitted insurer that later became insolvent. We find no breach of duty on the part of SLA and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are undisputed. Ord purchased an insurance policy covering claims for legal malpractice through its California insurance broker, Monroe Insurance Brokerage, Inc. (Monroe). Monroe secured a policy covering Ord's practice[1] from American Trust Insurance Company, Ltd. (Trust), which was domiciled in the British West Indies and not admitted to do regular business in California. Nonadmitted insurers such as Trust are permitted to write some policies for California insureds under certain circumstances, when acting through a California surplus lines broker such as Monroe, and under the overall aegis of the regulatory power of the California Insurance Commissioner (Commissioner) and the California Department of Insurance (Department). (Ins. Code, §§ 1761, 1763.) However, if such a nonadmitted surplus lines company becomes insolvent, its insureds are not protected by the California Insurance Guarantee Association (CIGA).

As part of the Department's regulation of nonadmitted insurers, a private nonprofit association, SLA, acts as a clearinghouse or conduit for information between the Department and California insurance brokers who deal with nonadmitted insurers. SLA provides the Department with information filed with SLA regarding the financial health and operations of nonadmitted insurers. It also notifies California brokers when a nonadmitted insurer has been barred from doing business in California by a Department cease-and-desist order. SLA itself has no regulatory authority or power over nonadmitted insurers and is simply a conduit for certain information between the Department and the industry.

When Ord was sued for legal malpractice by other parties, it sought to tender the defense of the claims and obtain coverage under the Trust policy it had obtained through Monroe. Ord was informed that Trust had insufficient assets to cover the claims, and CIGA would not assume the claims upon the insolvency of Trust, because CIGA does not cover nonadmitted insurers. Ord then brought this suit against Trust, the California insurance broker (Monroe), and SLA. Ord alleged SLA was liable for negligence, because it had breached a duty of due care allegedly owed to Ord by failing to adequately police the actions of the other defendants, Monroe and Trust. SLA had forwarded a notice to brokers such as Monroe, warning against doing business with Trust after the Department issued a cease-and-desist order against Trust, but the Ord policy was purchased before the Department had taken such action. Therefore, SLA had not issued a warning in time to stop Ord from purchasing its particular policy.

---

[1]The policy also covered E.O.C. Ord, name partner in the firm. E.O.C. Ord appeals as an individual and as E.O.C. Ord, a professional corporation.

SLA filed a motion for summary judgment, citing evidence disclosed in discovery and the declaration of an SLA administrator regarding the limited nature of its functions. The trial court granted the motion. It found there was no relevant dispute of fact and further, that SLA, as a matter of law, owed no duty to Ord. This timely appeal followed.

## DISCUSSION

■ We affirm the trial court's ruling. Under precedent from our Supreme Court cited and relied upon by the trial court, *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*), it is clear that the dispositive issue of the existence of a legal duty is a purely legal question to be decided by the trial court as a matter of law. Under *Bily*, the trial court correctly found SLA owed no legal duty to Ord that would create a negligence claim. The evidence showed SLA was a conduit for information between brokers dealing with nonadmitted insurers and the Department and that SLA does not have the power or authority to regulate nonadmitted insurers. Regulatory and police power is held by the Commissioner and the Department. Consequently, Ord's negligence claims against SLA fail for lack of an enforceable legal duty.

In *Bily, supra*, the high court held that accountants retained to audit a client's financial affairs owed no general duty of care to third persons not in privity with the accountant, as to the accuracy of the audit. (3 Cal.4th at pp. 375-376, 397-407; see also *Industrial Indemnity Co.* v. *Touche Ross & Co.* (1993) 13 Cal.App.4th 1086, 1092-1093 [17 Cal.Rptr.2d 29] [applying *Bily* retroactively].) Like the plaintiffs in *Bily*, who were not in privity with the defendant, Ord cannot and does not allege it was ever in privity with SLA. SLA dealt with California surplus lines brokers and the Department, which actually regulates nonadmitted insurers. SLA is not alleged to have said or represented anything to Ord regarding the financial condition of Trust. Since Ord was not in privity with SLA, and there was no other legally recognized duty on the part of SLA to step out of its role as a conduit of information and aid to the Department, SLA cannot be liable to Ord for negligence. (See *Bily, supra*, 3 Cal.4th at pp. 397-398.)

Other cases not cited by the parties fortify this conclusion. For instance, in the only recent California case found by our own research that addresses a comparable question of duty in the field of insurance, *Ahern* v. *Dillenback* (1991) 1 Cal.App.4th 36, 41-43 [1 Cal.Rptr.2d 339], the Fourth District held there was no special relationship imposing a duty upon an insurance agent or company to advise the insurance purchasers to obtain better or different

coverage beyond the scope of the policy acquired. And, in a more recent case from outside the insurance field, the Third District held in *Carleton* v. *Tortosa* (1993) 14 Cal.App.4th 745, 754-755 [17 Cal.Rptr.2d 734] that a real estate broker did not have a legal duty to advise an investor regarding the tax consequences of certain types of property exchanges, because the broker had not undertaken to provide tax planning and information to the investor.

Moreover, in *Industrial Indemnity Co.* v. *Touche Ross & Co.*, *supra*, our own court held there was no legal duty supporting a claim for negligence when the defendant was not in privity with the plaintiff and did not undertake to provide the plaintiff with information in order to influence any particular contemplated transaction. (13 Cal.App.4th at pp. 1093-1097; see also *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557, 1567 [275 Cal.Rptr. 878] [no special relationship sufficient to create legal duty between owner of public pay phone and nearby parking lot operator assaulted by third parties]; *Avis Rent a Car System, Inc.* v. *Superior Court* (1993) 12 Cal.App.4th 221, 233 [15 Cal.Rptr.2d 711] [car owner not liable when thief stole vehicle and rammed into third party].)

Nor was there any special relationship here between Ord and SLA that required SLA to warn Ord. There was no direct contact at all between SLA and Ord, and SLA did not create or increase the danger faced by Ord. (See *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 208 [185 Cal.Rptr. 252, 649 P.2d 894].) Finally, we note there is no close connection between SLA and the loss suffered by Ord and no moral blameworthiness in SLA's conduct here, both relevant factors indicating the absence of legal duty. (See *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].) Consideration of these factors suggests SLA is being sued simply because it was a solvent bystander at the time of actions by others who now happen to be insolvent or otherwise judgment proof.[2]

In the present case, nothing in the record indicates SLA failed in its duty to provide information to the Department regarding the financial condition

---

[2]Additionally, there is no merit in Ord's claim that a special relationship creating a legal duty existed because Ord paid a small "stamping fee" to Monroe, who passed the fee on to SLA, pursuant to statute and the Department's rules, when Ord's policy was filed with SLA. The filing fee is collected as a matter of routine, in order to support expenses incurred in assisting the Department and did not create any special relationship with this particular plaintiff. (See *Davidson* v. *City of Westminster*, *supra*, 32 Cal.2d at p. 208.) Similarly, the fact that Ord paid a state-imposed tax on the amount of its premium payment did not create any special relationship with SLA. Routine taxes or small filing fees do not create a special relationship, because they do not create or increase the risk faced by a plaintiff and do not constitute the issuance of a guarantee of safety to any particular person. (See *ibid.*; see also *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319, 333-334 [281 Cal.Rptr. 317] [public authorities had no special relationship with child attending day-care center licensed by public agencies].) These matters do not justify shifting liability from the true responsible

of Trust. Nor is there any dispute that SLA properly informed its member brokers, including Monroe, that they should stop writing new policies with Trust when the Department issued its cease-and-desist order.[3] It is unfortunate for Ord that it bought its policy before the Department issued its cease-and-desist order, but this circumstance does not mean SLA breached a legal duty owed to Ord, or was negligent, on the facts of record here. We conclude the trial court ruled properly in granting the motion for summary judgment, as there was no legal duty upon which a negligence claim against SLA could be predicated. (See *Bily, supra,* 3 Cal.4th at pp. 397-398.)

## DISPOSITION

The judgment is affirmed.

Chin, P. J., and Merrill, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 21, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

party, which is insolvent, to another entity. (See *Avis Rent a Car System, Inc.* v. *Superior Court, supra,* 12 Cal.App.4th at p. 233.)

[3]Ord belatedly relied at oral argument on a previous letter, not properly authenticated or entered into evidence in the trial court, to support a claim that SLA may have been negligent. Yet, nothing in this letter from the Department created in SLA a duty to warn Ord of Trust's financial condition before the Department issued its cease-and-desist order and SLA warned brokers of this fact. (See *Bily, supra,* 3 Cal.4th at p. 397.) In fact, the letter in question indicated the Department was not yet taking action against Trust.