[No. B089355. Second Dist., Div. Six. Nov. 21, 1995.]

NORMA LAURA MEDINA et al., Plaintiffs and Appellants, v.
HILLSHORE PARTNERS et al., Defendants and Respondents.

COUNSEL

William L. Veen, Kevin Lancaster and Gary Alexander for Plaintiffs and Appellants.

Henderson & Wohlgemuth, James B. Cole and Andrew K. Whitman for Defendants and Respondents.

OPINION

YEGAN, J.—Norma Laura Medina, individually and as guardian ad litem for her son Carlos Antonio Medina, appeals from a judgment of dismissal entered after the trial court sustained, without leave to amend, the demurrer of respondents Hillshore Partners doing business as Hillshore Garden Apartments, James Boyd, and Interstate Equities Corporation (hereafter landowner).

Appellants contend that landowner was liable for the death of Juan Carlos Medina because gang members were allowed to congregate in and around a Santa Barbara apartment complex owned by landowner. The gang assaulted the decedent, who was walking near the apartments, and chased him down a dead-end street. One of the gang members, a nonresident of the apartment complex, shot and killed decedent. The trial court ruled that the first amended complaint failed to state a cause of action for negligence or premises liability. We affirm.

### The Complaint

The first amended complaint alleges that Julio Rea resided at the Hillshore Garden Apartments, owned and managed by landowner. Rea and defendants, Jose Rogelio Arroyo, Anthony Ortega, John Villa, Edgar S., and Eric S., were members of a street gang called the "Westsiders."

On June 27, 1993, Juan Carlos Medina walked by the apartments. Rea and his companions thought decedent belonged to a rival gang and chased him. Appellants alleged that the gang chased decedent "down Modoc Road, one half block and up to a dead-end street (Hacienda Court), adjacent to Hillshore Apartments. [¶] . . . [A]s decedent ran up Hacienda Court, defendant John Villa, possessing the 22-calibre handgun of Anthony Ortega, aimed it at decedent, and shot him in the back of the head. After decedent fell to the ground, juvenile defendant Eric S. walked over to decedent and threw a brick at him, striking his person."

Prior to the shooting, the Westsiders used the apartment complex as their home base to commit criminal offenses. Tenants and law enforcement officials complained to the landowner about the gang. Appellants alleged that landowner negligently maintained and controlled the apartment complex by failing to take security precautions, such as evicting Rea or barring gang members from the premises.

### The Demurrer and Ruling

Landowner demurred on the theory that he breached no duty of care. It relied on *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557 [275 Cal.Rptr. 878] in arguing that the duty of a landowner to protect the safety of the public does not extend beyond the property line.

The trial court sustained the demurrer without leave to amend, cited *Martinez* v. *Pacific Bell, supra,* for the rule that premises liability ends where the control of the property owner ends, and said: "The facts alleged in the

complaint are that Medina was killed off the premises, in the public street, by a Westsider who was not a tenant of Hillshore. No tenant of Hillshore is stated to have directly aided or encouraged Villa in killing Medina. While plaintiffs allege that failure to properly control the premises played a part in causing Medina's death, the actual *facts* stated in the complaint do not so show. Villa was not a tenant, and could not have been evicted. There is no showing that evicting certain other gang members, assuming such were legally possible, would have somehow prevented Villa from killing Medina. There is simply no causal nexus alleged between the condition of the property and Villa's independent, intentional tort of killing Medina."

### Standard of Review and Judicial Notice

██ We accept the factual allegations of the complaint as true (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]) but review the first amended complaint de novo to determine whether the facts as pleaded state a cause of action. (*Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) In doing so, we take judicial notice of two matters of common knowledge: (1) that street gangs generally claim a "home territory" and attempt to prohibit rival gang members from entering the area upon threat of severe physical injury, and (2) that gang activity spawns violence. (Evid. Code, § 451, subd. (f).) The Legislature, in enacting Penal Code section 186.21, has found "that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods."

### Duty

██ The question presented is whether a landowner owes a duty to protect members of the public from gang members who congregate around an apartment complex and assault individuals on adjacent public streets. For the reasons stated herein, we hold that no such duty exists.

██ In California, a landowner owes a duty to exercise ordinary care in the use and management of his or her land. (Civ. Code, § 1714, subd. (a); *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R. 496].) "Normally, the duties do not extend to persons outside the land, e.g., on adjacent land or on the highway. [Citations.]" (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 898, p. 268.) Absent a special relationship, the landowner has no duty to protect members of the public against criminal activities occurring on a public sidewalk or street. (E.g., *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715,

719-720 [246 Cal.Rptr. 199] [law student attacked on sidewalk while leaving defendant's premises].)

In *Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207], our Supreme Court held that the owner of a shopping center was not liable when a tenant's employee was assaulted and raped on the tenant's premises. Plaintiff sued on the theory that the landowner was negligent in not maintaining or patrolling the common areas. The court held "that the scope of the duty [owed] is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] ' "[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]' [Citation.] Or, as one appellate court has accurately explained, duty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures. [Citation.]" (*Id.*, at pp. 678-679.)

■■■ Here the trial court ruled that landowner breached no duty of care because the wrongful death involved an off-site shooting. We agree. The decedent was assaulted off the premises. (*Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1146-1147 [214 Cal.Rptr. 405] [landowner not liable where business invitee murdered at off-site parking lot after attending a business function].)

*Martinez* v. *Pacific Bell, supra,* 225 Cal.App.3d 1557 is both illustrative and dispositive. There, the plaintiff was robbed and shot next to a public phone booth. The plaintiff filed suit against Pacific Bell for negligence, premises liability and public nuisance. The complaint alleged that Pacific Bell knew that criminals congregated around the phone booths and posed a danger to the life and safety of others. The trial court found that Pacific Bell breached no duty of care and sustained the demurrer without leave to amend.

The Court of Appeal affirmed based on the rationale that "premises liability is limited to the premises." (225 Cal.App.3d at p. 1561.) The court stated that California courts "have refused to extend premises liability principles, so as to make a property owner liable for a third party's tortious conduct occurring off the premises on nearby land. [Citation.] . . . [¶] The imposition of vicarious liability is particularly disapproved in cases where a landowner is claimed to be liable for the criminal acts of third parties committed on the premises of another. For instance, in the recent analogous

case of *Balard* v. *Bassment Event Security, Inc.* (1989) 210 Cal.App.3d 243, 246 [258 Cal.Rptr. 343], the plaintiff was attacked by third parties on a public street outside a singles bar she had patronized. She contended the security guard or bouncer at the entrance of the bar had a duty to protect her from such an assault—either by warning her of the danger, or by chasing away potential assailants who had been attracted to adjoining public thoroughfares by the fact that possible victims were leaving the premises. The court declined to expand premises liability principles so as to require owners to assume the duty of the sovereignty to police public areas near, but not on, their premises . . . ." (*Martinez* v. *Pacific Bell, supra,* 225 Cal.App.3d at pp. 1561-1562.)

The same principle applies here. Landowner had no duty to police the sidewalk and street in front of the apartment complex. The negligence and premises liability causes of action fail because no facts are alleged that the decedent entered the apartment complex or was assaulted on property controlled by landowner. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 807 [205 Cal.Rptr. 842, 685 P.2d 1193]; *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 384-385 [243 Cal.Rptr. 627].)

"The instant case cannot be distinguished from that of a movie theater showing the latest academy award winning movie, or a department store holding its annual clearance sale, neither of which is able to afford sufficient parking for the number of invitees seeking to enter the premises. We are aware of no obligation upon the movie theater or department store owner to provide additional lighting on the city streets or hire security guards to patrol those streets for the safety of its invitees. Nor can the instant situation be distinguished from that of a homeowner whose business guests must park on city streets because there is not sufficient parking on the premises. It is not legally incumbent upon the homeowner to provide additional lighting or hire security guards to escort his guests to their cars. And if the department store, movie theater or resident is located in a high crime area, why should the duty be discharged simply by affording the invitee safe passage to his vehicle? Why should it not continue until the invitee is safely away from the 'high crime area?' 'To ask the question is to demonstrate the futility of attempting to impose and define such a duty.' [Citations.]" (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d 1142, 1147.)

Appellants' reliance on *Rosales* v. *Stewart* (1980) 113 Cal.App.3d 130 [169 Cal.Rptr. 660] is misplaced. There a tenant, who used the backyard as a firing range, discharged a firearm from the house and shot and killed a 10-year-old neighbor. The decedent's family sued the landlord for wrongful

death. The Court of Appeal held that the complaint could be amended to allege that the landlord was negligent in not taking steps to terminate the tenant's lease. The landlord allowed the tenant to use the land as a firing range and anyone within the line of fire was within the zone of danger. "[I]t is alleged that the landlord had knowledge of the acts of the tenant and of the danger existent. This is not, in itself, sufficient to impose liability upon the landlord. As recognized in the cases cited by appellants, the landlord must also have the opportunity and the ability to eliminate the dangerous condition being created by the tenant." (*Id.*, at p. 134.)

The instant case is distinguishable because the firearm was not discharged from the apartment complex. Landowner cannot be held vicariously liable for a shooting incident that took place a half a block away from the apartment complex. This is so because landowners do not have the duty or ability to stop gang-related assaults in the street. No court has extended *Rosales* v. *Stewart*, *supra*, to a situation where a tenant leaves the premises and shoots a pedestrian on an adjacent street. We decline to do so here. "The imposition of such a duty is foreign to the concept upon which all premises liability is based, i.e., that possession includes the attendant right to manage and control, thereby justifying the imposition of a duty to exercise due care in the management of the property. [Citations.] The courts, therefore, have consistently refused to recognize a duty of persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control. [Citations.]" (*Owens* v. *Kings Supermarket*, *supra*, 198 Cal.App.3d 379, 386.)

## STEP

■ Appellants assert that the duties of a landowner were expanded when the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (STEP). (Pen. Code, § 186.20 et seq.) Penal Code section 186.22a provides in pertinent part: "(a) Every building or place used by members of a criminal street gang for the purpose of the commission of . . . any offense involving dangerous or deadly weapons, burglary, or rape, and every building or place wherein or upon which that criminal conduct by gang members takes place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered whether it is a public or private nuisance. [¶] (b) Any action for injunction or abatement filed pursuant to subdivision (a) shall proceed according to the provisions of Article 3 (commencing with Section 11570) of Chapter 10 of Division 10 of the Health and Safety Code, except that all of the following shall apply: [¶] . . . [¶] (4) Suit may not be filed until 30-day notice of the unlawful use or criminal conduct has been provided to the owner, by mail, return receipt requested, postage prepaid, to the last known address."

Under the act, the district attorney, the city attorney, or a citizen residing in the city may bring an action to abate the nuisance. (Pen. Code, § 186.22a, subd. (b); Health & Saf. Code, § 11571, subd. (a).) The act, however, was not intended to expand a landowner's vicarious liability for personal injuries occurring off the premises.[1] STEP merely provides that a civil action may be brought to abate gang-related nuisances occurring on the landowner's property. To assert a nuisance claim, the plaintiff must allege interference with the free use and enjoyment of his or her property. (*Lew* v. *Superior Court* (1993) 20 Cal.App.4th 866, 873 [25 Cal.Rptr.2d 42].) No such facts are alleged here.

A plaintiff may not invoke STEP and sue for wrongful death damages based on the theory that he or she is abating a private nuisance. (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124 [99 Cal.Rptr. 350].) "As Prosser points out, 'The essence of a private nuisance is an interference with the use and enjoyment of land' and '. . . without it, the fact of personal injury, or of interference with some purely personal right, is not enough for such a nuisance.' [Citations.] As observed in *Lind* [*Lind* v. *City of San Luis Obispo* (1895) 109 Cal. 340 (42 P. 437)], 'The injury which may entitle a private person to maintain an action to abate a public nuisance must be an injury to plaintiff's private property, or to a private right incident to such private property. . . .' [Citation.]" (*Id.*, at pp. 124-125.)

In *Martinez* v. *Pacific Bell, supra,* 225 Cal.App.3d 1557 the Court of Appeal held that the plaintiff could not rely on nuisance theories to hold Pacific Bell liable for a criminal assault that took place next to a phone booth. The court stated that ". . . no necessary legal connection exists between the maintenance of this type of alleged 'nuisance'—property which by definition is available for the essentially unsupervised use of the public—and the imposition of a legal duty to police the surrounding area for hoodlums, or compensate as a matter of vicarious liability for their intentional and intervening tortious conduct. No persuasive policy reason exists for creating such a rule." (*Id.*, at p. 1569.)

We believe the same policy factors apply whether a phone booth, a shopping center, or an apartment building is located on the landowner's property. In *Ann M.* v. *Pacific Plaza Shopping Center, supra,* our Supreme Court explained that the cost of hiring security guards to patrol the common areas in a shopping center "is not insignificant. Moreover, the obligation to

---

[1]Penal Code section 186.22a, subdivision (d) states: "Nothing in this chapter shall preclude any aggrieved person from seeking any other remedy provided by law." Subdivision (b)(1) states: "The court shall not assess a civil penalty against any person unless that person knew or should have known of the unlawful acts."

provide patrols adequate to deter criminal conduct is not well defined. 'No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation.' [Citation.] Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. [Citation.] . . . To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy in this state. [Citations.]" (6 Cal.4th at p. 679.)

So too here. A landowner, as a matter of public policy, is not vicariously liable for gang-related assaults that occur on public sidewalks and streets. We agree that the congregation of gangs poses a foreseeable risk of harm to the public. The instant shooting and death are tragic. Such gang-related homicides are all too frequent. However, the foreseeability of the criminal assault does not compel the ruling that landowners owe a duty to protect the public from gang-related crimes or assume a special relationship with members of the public who use adjacent streets and sidewalks. "If not . . . concretely linked to a legal relationship the quest for foreseeability is endless because foreseeability, like light, travels indefinitely in a vacuum." (*Newton* v. *Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, 391 [228 Cal.Rptr. 890].) We reject the argument that nuisance theories can be used like a light beam to render a landowner liable for crimes occurring on adjacent streets.

The judgment is affirmed. Costs to respondents.

Gilbert, J., concurred.

**STONE (S. J.), P. J.**—I dissent.

Appellants' complaint states that the Westsiders gang used respondents' property as their gang headquarters. The headquarters was established there because some of the gang members were respondents' tenants. At these headquarters, gang members conspired to and did commit a multitude of violent crimes on and adjacent to respondents' premises. Tenants and law enforcement officials repeatedly complained to respondents about the gang's criminal activities. Respondents had a clause in their lease giving them the power to evict tenants for committing criminal acts on their property. Respondents did not utilize this clause to evict gang members. As a result, gang activities continued on respondents' property and in the surrounding neighborhood. These activities constituted a dangerous condition which proximately caused the victim's death. After walking past respondents' premises, Westsiders gang members chased him from respondents' property

to a dead-end street near respondents' property—allegedly within the gang's territory—and one of the gang members shot him in the head. These allegations state a cause of action against respondents.

The trial court not only improperly treated appellants' complaint as proof of their claims, it misinterpreted their allegations.

The trial court determined that appellants' complaint failed to allege a causal connection between the victim's death and the condition of respondents' property because 1) the gang member who shot the victim was not respondents' tenant, 2) the shootist acted without encouragement from respondents' tenants, and 3) the shooting occurred off respondents' premises.

The first and third facts are presumed true. However, the second alleged fact is inaccurate. As pled, the shootist did not act alone but in concert with gang members. The gang members chased the victim along with the killer and all were motivated by gang purposes.

Moreover, although the shootist was not respondents' tenant, viewing him as an unrelated third party also is inconsistent with the pled facts which state that the shootist was a Westsiders gang member. Like his fellow gang members, he used respondents' property to threaten and harm people both on and off the premises. The trial court seems to have forgotten that this was a *pleading* issue, not an issue of proof.

The trial court further appears to have prematurely determined the facts by concluding that evicting gang member tenants would not have prevented the victim's murder. To the contrary, if respondents had lawfully evicted tenants who were gang members, it may be that the gang would have stopped congregating on their property. If the gang had stopped congregating on respondents' property, it may be that the victim would not have been attacked by gang members as he walked by the premises. These matters are to be determined in trial, not at the pleading stage.

Although a person generally has no duty to control the conduct of third parties, the rule has no application if the defendant's failure to act has created an undue risk of harm. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 48 [123 Cal.Rptr. 468, 539 P.2d 36].) By unlawfully allowing the Westsiders gang to congregate on their property, appellants claim that respondents have created an undue risk of harm to third persons passing on or near their land. The majority acknowledge that "the congregation of gangs poses a foreseeable risk of harm to the public." (Maj. opn., *ante*, p. 486.)

According to the majority, the issue here is broadly whether a landowner owes a duty to protect the public against gang members who assault people

on public streets. That simply is incorrect; this case is not about an assault occurring off the landowner's property.

This case deals with a landowner's liability in allowing an alleged known dangerous condition to flourish on its property, which, it is alleged, proximately caused a deadly injury off his property. The issue here is not whether a landowner is liable for isolated criminal acts of unrelated third parties. The issue is whether a landowner owes a duty to protect the public against gang members who congregate on the landowner's property when the landowner has means to prevent this condition.

The majority impliedly admits that a dangerous condition existed on respondents' premises by taking judicial notice 1) that street gangs such as the Westsiders generally claim a home territory within which they prohibit rival gang members from entering by violent means; 2) that gang activity spawns violence; and 3) that California is in a state of crisis created by gang violence (Pen. Code, § 186.21).

The leading case authority in the area of dangerous conditions on land is *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121]. The majority ignores this authority, as well as the pertinent area of law contained in the Restatement Second of Torts, sections 364 to 370, entitled "Liability of Possessors to Persons Outside of the Land." Of particular relevance is section 364 of the Restatement, which provides: "A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if [¶] (a) the possessor has created the condition, or [¶] (b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or [¶] (c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

The *Sprecher* court agreed with the Restatement that a possessor's liability for harm caused by artificial conditions is determined by ordinary negligence principles. (30 Cal.3d at p. 362, citing Rest.2d Torts, §§ 364-370.) The court also clarified the law relating to dangerous conditions on land in several respects. First, it invalidated the common law rule generally immunizing a landowner from liability for injury caused by a condition of the land to persons or property not on its land. Second, it held that a landowner's liability for harm caused by a condition of the land, no matter if the condition is natural or artificial, is now determined by ordinary negligence

principles imposing on a landowner the duty of reasonable care in the maintenance of property. (30 Cal.3d at pp. 363-365, 371.) This duty is based on the possession of the premises and the attendant right to control and manage it. (*Id.*, at pp. 368-369.) Consistent with the Restatement Second of Torts, a landowner is under an affirmative duty to act with regard to a dangerous condition, even if he played no part in the creation of the condition. (30 Cal.3d at pp. 369-370.)

I agree with the majority that a landowner has no right to control and manage property owned by another. (*Hamilton* v. *Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706, 1711 [8 Cal.Rptr.2d 819].) A fortiori, a defendant cannot be held liable for a dangerous condition of property which defendant did not own, possess or control. (*Ibid.*, citing *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) Here, however, the majority seeks, in effect, to reestablish the old common law rule of a landowner's general immunization against liability for harm occurring outside his property. In other words, the majority appears to believe that a landowner is *not* liable for a dangerous condition on his land which causes injury *outside* his land.

The majority's view is unsupported by its case authority. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207] [rape in shopping center store controlled by tenant and not by defendant owner of shopping center]; *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557 [275 Cal.Rptr. 878] [shooting on another's property where defendant telephone company had placed a telephone booth]; *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379 [243 Cal.Rptr. 627] [customer of defendant market struck by car on adjacent public street]; and *Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr. 405] [fatal stabbing in parking lot over which defendant business had no control].) None of these cases involves the situation of an *established* dangerous condition over which the landowner allegedly had control. The control which existed here was respondents' ability to evict gang member tenants.

The majority fails to analyze the major factors which determine if a landowner owes a duty to third persons: the foreseeability of harm to plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, the policy of preventing future harm, the extent of defendant's burden compared to the consequence to the community, and the availability of insurance for the risk involved. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr.

97, 443 P.2d 561, 32 A.L.R.3d 496]; *Sprecher* v. *Adamson Companies*, *supra*, 30 Cal.3d at p. 363.) A consideration of these factors here militates in favor of, not against, appellants' position that respondents owed a duty to the decedent.

The foreseeability factor is fulfilled by the alleged facts in appellants' complaint that respondents knew the gang congregated on their property and committed violent acts against persons on and off their property. The second factor is met by the victim's killing as a gang effort. The third factor of causation is fulfilled by the alleged facts that respondents failed to evict gang member tenants despite respondents' knowledge of their violent activities, and this failure ensured gang activities would continue on and nearby respondents' property. The factors of moral blame and policy of preventing future harm are present as shown by the majority's admission that gangs constitute a serious threat to the public's safety. The burden/benefit factor also favors appellants; the burden of evicting gang members may be minimal compared to the beneficial community consequence of stopping the gang from using the neighborhood as their "territory." Finally, landlords normally have insurance for damage caused by tenants.

The majority makes several unsupported conclusions about the purported legal effect of allowing appellants to proceed with their action.

The majority suggests the burden on respondents would be too great. This is based on the erroneous assumption that appellants are advocating a duty by respondents to police the sidewalk and street abutting their property, and on the expense and trouble of filing unlawful detainer actions. Regarding the latter point, this burden is inherent in owning and maintaining any rental property. Regarding the former point, no one is trying to deputize anyone. Appellants' allegations plainly concern respondents' failure to clean up their own property. The charge is that respondents knowingly failed to enforce their anticrime lease provision, with the result that the Westsiders gang continued to use respondents' property for its criminal activities on and off the premises.

The majority additionally erroneously states that appellants are attempting to use the California Street Terrorism Enforcement and Prevention Act (Pen. Code, § 186.20 et seq.) as a basis for "expanding" the duties of landowners. Even if they have the ability to do so, appellants have not pled a cause of action under the act. Their complaint also cannot be interpreted as seeking an "expansion" of landowner duties. Liability for maintaining a dangerous condition on one's property, the basis of appellants' complaint, is hardly a new legal theory. (Rest.2d Torts, §§ 364-370; see also *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 511-512 [118 Cal.Rptr. 741, 81 A.L.R.3d

628] [the law imposes on a landlord the duty to use ordinary care to eliminate a dangerous condition over which the landlord has control]; *Moeller* v. *Fleming* (1982) 136 Cal.App.3d 241, 244-245 [186 Cal.Rptr. 24] [a landowner may be liable for letting a condition on his property create a dangerous situation on an adjoining public sidewalk]; *Rosales* v. *Stewart* (1980) 113 Cal.App.3d 130, 133-135 [169 Cal.Rptr. 660] [a landlord may be liable for the dangerous acts of a tenant which were not confined to the leased premises]; *Bisetti* v. *United Refrigeration Corp.* (1985) 174 Cal.App.3d 643, 648-649 [220 Cal.Rptr. 209] [a landlord who has actual knowledge of a dangerous condition on his property owes a duty of care when he has the right to prevent the presence of the dangerous condition].)

Like the trial court, the majority misinterprets appellants' allegations. The simplistic approach of relying on the single fact that the shooting occurred off respondents' premises ignores the complete factual allegations presented by appellants' complaint. When these factual allegations are considered in their entirety, it is evident to me that appellants have pled a cause of action against respondents for premises liability based on the maintenance of a dangerous condition on their land.

I would hold that appellants are entitled to their day in court. I would reverse the judgment.